IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:24-MJ-325 |
| GOKHAN GUN | |
| Defendant. | |

**UNITED STATES' MEMORANDUM ON DETENTION**

The United States of America, by and through the undersigned counsel, respectfully requests that the Court order Gokhan Gun ( "Defendant") detained because there is no condition or combination of conditions that will reasonably ensure his appearance or the safety of the community if he is released. As discussed further below, the Defendant, who has no real ties to the community, violated his oath to protect classified information by taking such information home, and he apparently intended to transport a subset of that classified information abroad. The Defendant currently is charged by complaint with the unauthorized removal and retention of classified material in violation of 18 U.S.C. § 1924(a). While the government intends to file additional felony charges, as discussed below, the case against the Defendant is already strong even as new evidence continues to come to light following his probable cause arrest last Friday.

Early on August 9, 2024, the Defendant, an electrical engineer with the United States Department of Defense (DoD) with a TOP SECRET security clearance, was on his way to Mexico for what he later described to FBI agents as a "fishing trip." Agents approached the Defendant as he walked toward his ride to the airport and ultimately searched the backpack he had prepared for

1

his foreign trip. Despite the training he had received in the process of obtaining his security clearance, and despite the non-disclosure agreements he had signed with DoD, the Defendant had packed a classified document with a visible TOP SECRET classification marking and a print-out containing a list of his security clearances in his backpack—clear evidence that the Defendant intended to remove classified information not only from his secure government workspace, but also from the United States.

The allegations in the complaint—along with the Defendant's alleged attempt to take documents with visible TOP SECRET markings beyond our borders; his lack of ties to the community; dual-citizenship; and financial resources—require his detention pending trial. The Defendant poses both a risk to public safety and a serious risk of flight. He should be detained pending trial.

## BACKGROUND

The Defendant is a 50-year-old resident of Fairfax County, Virginia. Born in Turkey, he became a United States citizen in 2021 and retains his Turkish citizenship. The Defendant lives alone and has no immediate family in the area. According to the government's information, his parents remain in Turkey. The Defendant works in a civilian capacity as an electrical engineer for DoD, specializing in wireless communications. The Defendant works in the Eastern District of Virginia at the Joint Warfare Analysis Center (JWAC), which supports US Strategic Command's (USSTRATCOM) Director of Global Operations. The Defendant's specific engineering skill set aligns with JWAC's ability to provide effects-based, innovative precision network conventional targeting options for USSTRATCOM's warfighting customer base. The Defendant has worked at JWAC since September 2023.

Through this employment, the Defendant was granted a TOP SECRET security clearance with access to Sensitive Compartmented Information (SCI) and received training about how to properly handle classified information—which did not include taking and storing such information inside his home or, worse still, taking it out of the country. Notably, the Defendant has the means and ability to travel internationally somewhat regularly, thus increasing the likelihood he has resources to flee the United States. In the past twenty years, he has taken at least fifteen overseas trips, including seven trips to Turkey (where his parents live), as well as trips to Qatar, the United Kingdom, Canada, Germany, the Netherlands, and Italy.

As detailed in the criminal complaint, beginning on or about May 10, 2024, and continuing through August 9, 2024, the Defendant printed material with visible classification markings at his workplace, removed it, and stored it at his residence, contrary to his training and in violation of 18 U.S.C. § 1924. As alleged in the complaint, the Defendant removed material that was marked as classified by printing it out at work—often after most employees would have left for the day—and then physically carrying the hard copy documents out of the building in a bag. Less than a week before his scheduled trip to Mexico on August 9, 2024, the Defendant again printed pages with visible classification markings.

On the morning of August 9, 2024, the Defendant was scheduled to fly to Puerto Vallarta, Mexico. Early that morning, as the Defendant prepared to enter a ride share at his residence, FBI agents executed a search warrant on the Defendant's person and two of his residences. Agents discovered a fanny pack containing both the Defendant's current U.S. passport as well as his Turkish passport, which had expired in 2023, alongside his wallet. In a backpack that agents observed resting outside of the Defendant's locked entryway door, agents found a document with

visible TOP SECRET classification markings as well as the Defendant's intelligence community entitlement's page, which listed his security clearances. The Defendant's backpack is not an authorized location for which classified materials may be stored. An original classification authority (OCA) has since confirmed that the marked document in the Defendant's backpack is currently classified at the TS//SCI level, meaning its unauthorized disclosure could reasonably be expected to do exceptionally grave damage to the national security of the United States.

FBI agents arrested the Defendant and advised him of his *Miranda* rights. The Defendant consented to an interview and proceeded to provide demonstrably false information. First, he falsely denied ever taking any classified documents from his workplace (despite having classified documents in his backpack and in his home). Then, he falsely stated that if there were any documents with classification markings in his residences, the classifications might be "expired."

The Defendant was charged by criminal complaint with a violation of 18 U.S.C. § 1924. The Defendant had his initial appearance on the afternoon of August 9, 2024, and the government moved for his detention pending trial at that time.

## APPLICABLE LAW

Upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must order a defendant's pretrial detention. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *see United States v. Salerno*, 481 U.S. 739, 750 (1987). A finding of risk of flight must be supported by a preponderance of the evidence. *See United States v. Stewart*, 2001 WL 1020779, at *2 (4th

Cir. 2001). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. 18 U.S.C. §§ 3142(e)(1), (f)(2).

The Court must consider the following factors to determine whether detention is appropriate: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Pursuant to the Bail Reform Act, the Government may proceed by factual proffer in lieu of presenting live witnesses at a detention hearing. *See United States v. Williams*, 753 F.2d 329, 331 n.7 (4th Cir. 1985) ("Evidentiary proffers are approved by 18 U.S.C. § 3142(f)."); *United States v. Chappelle*, 51 F. Supp. 2d 703, 706 (E.D. Va. 1999); *see also Gerstein v. Pugh*, 420 U.S. 103, 120 (1975) (approving of a judge issuing a detention order based on "informal modes of proof" such as hearsay and written testimony).

## ARGUMENT

The Defendant should be detained. The FBI arrested him as he was preparing to travel internationally with a document bearing visible TOP SECRET classification markings and his *bona fides* as a member of the U.S. intelligence community, along with both a U.S. and an expired Turkish passport. Post-*Miranda*, the Defendant's nonsensical explanation was he was leaving for a fishing trip, though it is unclear how highly classified U.S. Government information would help him in this endeavor. Were it not for the FBI's timely actions, the Defendant would have taken materials bearing TOP SECRET classification markings not only outside of the government facilities designed to protect such sensitive information, but outside the borders of our country. While the FBI continues to review evidence seized from the Defendant's home on Friday to

5

determine his intentions—including whether he stored any of these materials, or others, in digital format, accessible via the cloud—it is clear the Defendant poses a significant danger to the community and a significant risk of flight.

### I. The Nature and Circumstances of the Offense are Exceptionally Serious

The Defendant is charged with unauthorized removal and retention of classified documents and material, in violation of 18 U.S.C. § 1924(a). This is a very serious offense. The Defendant is alleged to have removed and planned to travel with information bearing visible TOP SECRET classification markings. Under Executive Order 13526, information is classified TOP SECRET if its unauthorized disclosure could reasonably result in *exceptionally grave damage* to the national security. The Defendant's actions are contrary to the extensive training he received and the detailed nondisclosure agreements he signed. Moreover, the evidence in this case suggests that the Defendant's actions were far from accidental. Indeed, the Defendant's pattern of printing after his workplace's general hours, carrying out both classified and unclassified documents, and then packing a marked classified document along with a list of his security clearances and multiple passports suggests that his actions were deliberate and premeditated. The Defendant's crimes reflect not only a lack of respect for rules and restrictions on his behavior, but also a willingness to betray the trust of this Nation.  There is no reason to believe that, if released, the Defendant will have any greater regard for any trust placed in him by the Court than he did for his oath to protect classified information.

Congress recognized the seriousness of compromising the security of classified information through substantial criminal penalties, including Section 1924. *See also* 18 U.S.C.

§§ 793, 794. Here, the investigation is ongoing, the government anticipates that it may well file additional charges against the Defendant. If the government concludes that the documents the Defendant removed contain national defense information, the government may charge the Defendant with violating 18 U.S.C. § 793, which carries a statutory maximum term of imprisonment of ten years. The Defendant's alleged crime, and the potential for additional charges, are extremely serious within the meaning of the Bail Reform Act.

The nature of the offense with which the Defendant has been charged is serious on its own; the circumstances under which he committed this offense are exponentially worse given that he appeared ready to take at least some of this material overseas for an as of yet unknown purpose. Thus, this factor militates in favor of his detention.

## II.     Based on the Defendant's History and Characteristics, He is a Flight Risk

The Defendant has traveled overseas on multiple occasions. His immediate family lives in Turkey. He was attempting to leave the country at the time of his arrest, with his expired Turkish passport in hand. Even were the Court to seize his travel documents such that he could not flee the country, the Defendant has a strong incentive to do everything he can to avoid facing these charges.[1] Given the strength of the evidence in this case, The Defendant could readily seek to flee the area, go into hiding, or otherwise simply fail to appear at trial. *See United States v. Anderson*,

---

[1] It is also important to bear in mind that the Defendant was arrested very quickly in a fast-moving investigation. While he has been charged with unauthorized removal and retention of classified documents and material, in violation of 18 U.S.C. § 1924(a) in the criminal complaint, it is certainly a possibility that additional charges will be included in an indictment of Gun. In addition, depending on the results of the searches of his electronic devices, and the materials seized from his multiple homes, the FBI could learn a great deal more about Gun's intent, including whether he has been working with others seeking to obtain classified U.S. government information.

384 F. Supp. 2d 32, 36 (D.D.C. 2005) (holding that the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to avoid prosecution and the likelihood of imprisonment in the event of a conviction). And such flight need not be international for the Defendant to attempt to evade this Court's jurisdiction. The Defendant owns two properties outside the Eastern District of Virginia – one in Texas and one in Florida. Flight to either of these residents would also take him out of this Court's jurisdiction.

The Defendant's incentive to escape the jurisdiction of this Court would not be diminished even if he surrenders his passport. Given the nature of his offenses and knowledge of national secrets, he presents tremendous value to any foreign power that may wish to shelter him within or outside of the United States. With his Turkish citizenship, the Defendant could drive into Washington, D.C. and seek asylum at the Turkish embassy or request a new passport to facilitate his travel out of the country. The severity of the potential penalties the Defendant faces, and will probably face should additional charges be filed, provides further incentive to flee the country and never return, or to seek refuge with a foreign government willing to shield him from facing justice in this Court in exchange for access to information that he knows or possesses.

Based on the history and characteristics of the Defendant, he presents a substantial risk of flight that cannot be lessened by simply seizing his travel documents or restricting him to his home.

### III. The Defendant Poses a Grave Threat to the Safety of the Community

The Defendant poses an unacceptable threat to the public. On or about September 25, 2023, as part of his responsibilities with DoD, the Defendant signed a Classified Information Nondisclosure Agreement. Additionally, on or about December 12, 2023, he signed a Sensitive Compartmented Information Nondisclosure Agreement. Both agreements provide, in part, that the

mishandling, retention, or unauthorized disclosure of classified or Sensitive Compartmented Information may violate U.S. law, including Title 18, United States Code, Sections 793, 794, and 1924. Despite those acknowledgements, the Defendant chose to violate his duty to protect classified information, and, in fact, he took a great deal of highly sensitive material out of his workspace in violation of the law.

The government continues to actively recover anything the Defendant improperly removed. However, the Defendant had access to classified material whenever he was at his workspace, and it is possible that he has digitally stored or memorized classified information that could be valuable to our foreign adversaries. If the Defendant were to be released, there is no condition of pretrial confinement that could assure that he would not successfully reveal that information to other bad actors.

These facts paint a grave picture of the threat the Defendant poses to the American public. His willingness to violate his nondisclosure agreements in such a blatant fashion demonstrates that he has no compunction about improperly handling material that has the potential to cause exceptionally grave damage to this country's national security. It is clear that there is no condition or combination of conditions that can sufficiently mitigate the risk that the Defendant poses to the community.

### IV. The Weight of the Evidence is Against the Defendant

Where the evidence of guilt is strong, it provides a considerable additional incentive to flee. *See United States v. Sheikh*, 994 F. Supp. 2d 736, 742 (E.D.N.C. 2014) (finding that the defendant had a strong incentive to not appear in part because the evidence was strong). In this case, law enforcement recovered a significant volume of classified material from the Defendant's

home. He lives alone, making clear that the Defendant is the sole source of this material which he removed without authorization and retained in an unauthorized location. DoD surveillance videos show the Defendant not only printing out a large volume of paper, but then carrying it out of the building.

The evidence of the Defendant's consciousness of guilt is also strong, as demonstrated by his obvious lies to law enforcement. As described above, after consenting to an interview, the Defendant told the FBI that he never took anything classified from his workspace; a lie. He also said he had no reason to take classified materials to his residences. While there is certainly no legal reason why the Defendant would have possessed classified information he obtained through his employment with the U.S. Government in his residence, there is ample evidence that he did, indeed, store documents with classification markings at his home. When confronted with this obvious fact, the Defendant dissembled, suggesting that if there were documents with classification markings, the classifications might be "expired." Based on the search results, the markings on the documents in the Defendant's house do not indicate that they were "expired."

Given the strength of the evidence against him, there is no "condition or combination of conditions [that] will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1).

## CONCLUSION

The Defendant, who has no demonstrable ties to this community and took steps to remove and retain classified materials without detection. He then packed certain of those materials into a carry-on bag and prepared to leave the country carrying those classified materials, his intelligence community *bona fides*, and multiple passports. The Defendant's actions indicate he intended to do more than simply illegally retain classified information in his home. Accordingly, for all the foregoing reasons, the United States respectfully requests that the Defendant be detained pending trial.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:    /s/
John T. Gibbs
Anthony J. Rodregous
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Email: john.gibbs@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing ("NEF") to all counsel of record.

                                        /s/
                              John T. Gibbs
                              Assistant United States Attorney
                              United States Attorney's Office
                              2100 Jamieson Avenue
                              Alexandria, Virginia 22314
                              Phone: (703) 299-3700
                              Email: john.gibbs@usdoj.gov